Argued May 5, affirmed June 14, 1961

## CARTER ET AL v. PORTLAND GENERAL ELECTRIC CO. ET AL

362 P. 2d 766

*Paul R. Meyer,* Portland, argued the cause and filed a brief for appellants.

*Alfred H. Stoloff,* Portland, argued the cause for

respondents. With him on the brief were Phillips, Coughlin, Buell & Phillips, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

## SLOAN, J.

Plaintiffs are stockholders in defendant corporation. The individually named defendants are officers of the corporation. In this proceeding plaintiffs wanted judicial intervention in the conduct of a stockholders' meeting. The trial court sustained a demurrer to an amended complaint. Plaintiffs declined to plead further and judgment was entered against them. They appeal. The facts stated are taken from the amended complaint.

This internal dispute started when the board of directors of the corporation initiated plans to build the Round Butte Dam on the Deschutes River. Prior to an annual stockholders' meeting scheduled for and held on April 20, 1960, plaintiffs requested the officers to submit to all of the stockholders a statement in opposition to construction of the dam. The officers refused. The officers did solicit the stockholders for proxies and forwarded to each stockholder, in advance of the meeting, other material the officers wanted to have considered at the meeting.

At the meeting itself one of plaintiffs attempted to present from the floor his resolution in opposition to the Round Butte Dam project. The chairman of the meeting ruled him out of order. This presumably was because the question was one for board of director determination.

Plaintiffs then filed this suit. They request that

the court order the defendant officers to submit to the stockholders their objections to the dam project and ask that we restrain the officers from soliciting proxies from other stockholders unless the solicitation for the proxies contains information about plaintiffs' objections to the dam project.

Plaintiffs alleged a breach of fiduciary duty on the part of the officers but otherwise did not allege that the officers had violated any law; nor any by-law or article of incorporation; nor was fraud alleged. It was conceded that the opinion of the stockholders would be advisory only. The power of decision was exclusively vested in the board of directors. ORS 57.180. Plaintiffs frankly ask the court to plow new ground. Primarily they want the court to judicially adopt rules promulgated by the Securities and Exchange Commission in respect to proxy solicitation. Defendant corporation is not subject to these particular regulations. If it were, a different case may have been presented. Loss, *The SEC Proxy Rules in the Courts,* 1960, 73 Harv L Rev 1041, and Loss, *The SEC Proxy Rules and State Law,* 1960, 73 Harv L Rev 1249.

The SEC was empowered to adopt these rules by three separate acts of the Congress—Securities and Exchange Act of 1934, Public Utility Holding Company Act of 1935, and the Investment Company Act of 1940.

"* * * The Commission has accordingly designed its rules so as to make the proxy device the closest practicable substitute for attendance at the meeting. Basically the rules follow a three-way approach: (1) Anybody who solicits a proxy, unless he is a nonmanagement person soliciting not more than ten others, must file with the Commission and give each person solicited a specified form of proxy together with a 'proxy statement' con-

taining prescribed information. (2) Management is required, as a condition of its own solicitation, to mail the proxy material of any voting security holder at his expense, and also to include in its own proxy literature any proper proposal suggested by such a holder together with his supporting statement of not more than one hundred words. (3) A general fraud rule prohibits any materially false or misleading statements." op cit., 73 Harv L Rev at 1043.

The statutes and the regulations also contain police authority to enforce the regulations. This includes a determination in the first instance of what is a "proper proposal" that must be submitted to all of the stockholders by management when it solicits proxies.

It must appear obvious that the imposition of the SEC rules to Oregon corporations not subject thereto could not be made by a court; even in respect to this particular case. A judgment of such consequence could only be made after a comprehensive study of facts. Facts that are not available or ascertainable by a court. An example of just one problem of limitation that a court could not possibly decide is found in a comment by Garrett, *Attitudes on Corporate Democracy*, 1956, 51 Nw U L Rev 310, 316:

"Considerable effort has been made to [extend the SEC proxy regulations to] unlisted corporations. For several sessions of Congress a bill was pending, bearing the name of Senator Frear of Delaware, which would empower the SEC to prescribe proxy rules and regulations for unlisted corporations. The bill did not apply to corporations having less than 300 shareholders and $3,000,000 in assets. The Frear bill did not pass. It has been superseded by a bill bearing the name of Senator Fulbright, of Arkansas. The Fulbright bill would make the Proxy Rules applicable to unlisted

corporations having at least 750 shareholders of record of a class of shares or debt securities of $1,000,000 principal amount outstanding in the hands of the public, and total assets of $2,000,000. * * *" (Footnotes omitted)

This court does not know, of course, if problems exist in Oregon that require this solution and certainly we do not know how large a body of stockholders a corporation must have before the corporation must conform. The matter of the solicitation of proxies and other questions involving the government of corporations has already been the subject of legislatively created studies in other states. The magnitude of the studies made or required evidences the futility of a court attempting to formulate what the rules should be. For a summary of the extensive study already made by the New York Law Revision Commission of the differing problems involved in regulating closely held corporations in contrast to large corporate organizations, see Israels, *The Commission and the Corporation Laws,* 1955, 40 Cornell L Q 686. For a study of other state legislative proposals and adoptions in respect to corporate regulations in recent years see Jennings, *The Role of the States in Corporate Regulation and Investor Protection,* 1958, 23 Law & Contemp Prob 193. The court cannot judicially adopt these rules.

But, it is said that we should adopt the spirit of the SEC regulations and hold that the matter plaintiffs wanted to submit to the stockholders' meeting was a "proper" matter for stockholders' consideration; and that we should judicially compel the defendant officers to permit the stockholders to vote on the issue. In support of this and other arguments plaintiffs rely on *Securities and Exchange Com'n v. Transamerica Corp.,* 163 F2d 511 (3rd cir, 1947), cert den,

332 US 847, 68 S Ct 351, 92 L Ed 418. The case is persuasive. It is also distinguishable. The case was before the court on petition of the SEC seeking enforcement of its finding that Transamerica was in violation of SEC regulations and its order that Transamerica permit its stockholders to vote on certain proposals submitted by a stockholder. The case is significant in that at least two of the proposals submitted were matters that would normally be for the determination of the board of directors. The court held that the issues proposed were "proper" matters for the stockholders to vote upon.[1] It enforced the order of the SEC which required these proposals to be submitted to the stockholders.

In the *Transamerica* case the court was only concerned with enforcement of Congressional and administrative determinations. The size and nature of a corporation to which the court's holding would apply was of no concern to the court. The area of regulation was fixed. The court did not need to concern itself with the effect its ruling might have on other corporations of whatever size or nature not subject to SEC supervision.

Here, if we adopt the rule it would be without limitation. It would apply to any stockholder of any corporation. Nor does there exist any administrative body to make any preliminary determination that a stockholder's proposal is a "proper" one. In simple

---

[1] The three proposals considered by the circuit court were:

"(1) To have independent public auditors of the books of Transamerica elected by the stockholders, beginning with the annual meeting of 1947, a representative of the auditing firm last chosen to attend the annual meeting each year.

"(2) To amend By-Law 47 in order to eliminate therefrom the requirement that notice of any proposed alteration or amendment of the by-laws be contained in the notice of meeting.

"(4) To require an account or a report of the proceedings at the annual meeting to be sent to all stockholders." 163 F2d at p. 513.

reality we would be acting in a void. We do not nor is there any means by which we could know the ultimate repercussions of such a rule. We know that it could be invoked for harassing purposes that could only be avoided by extensive litigation. We must be aware that to judicially impose the suggested rules in these circumstances might well impair rather than benefit the orderly development of this important area of the law of corporations.

Secondly, we do not think that the proposal in this case was one that was necessarily proper for the stockholders to give an advisory opinion about. Granted, that the proposed dam project would commit a large part of the corporate defendant's assets and credit. By the same token, it also involved extensive engineering, economic, financial and even political considerations. It is impossible to believe that the obviously voluminous character of such data could have been abbreviated to the point that any communication with the stockholders or debate at the annual meeting could have resulted in any knowing or sensible vote by the stockholders.

Bear in mind that this was not a dispute as to who should be elected directors. It was not a proxy fight. Nor were there allegations of fraud or misconduct. It was simply a dispute as to what advice the officers should be compelled to receive from relatively uninformed stockholders. In contrast, the proposals submitted in the *Transamerica* case were matters to which stockholders could give reasonably intelligent answers.

The trial court correctly decided this case. Judgment affirmed. Costs to neither party.